# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Graciela Urbieta and Mateo Urbieta,

        Plaintiffs,

    v.

Mentor Corporation and Mentor
Worldwide LLC,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 13-1927 ADM/LIB

---

Daniel J. Thornburgh, Esq., Aylstock, Witkin, Kreis & Overholtz, PLLC, Pensacola, FL; and
Yvonne M. Flaherty, Esq., Lockridge Grindal Nauen PLLP, Minneapolis, MN, on behalf of
Plaintiffs.

Dustin Bradley Rawlin, I, Esq., and John Q. Lewis, Esq., Tucker Ellis LLP, Cleveland, OH; Jan
R. McLean Bernier, Esq., and Tracy J. Van Steenburgh, Esq., Nilan Johnson Lewis PA,
Minneapolis, MN, on behalf of Defendants.

---

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on

Defendants Mentor Corporation and Mentor Worldwide LLC's (collectively, "Mentor")

Objection [Docket No. 115] to Magistrate Judge Steven E. Rau's May 15, 2018 Order [Docket

No. 114] ("Punitive Damages Order") granting Plaintiffs Graciela Urbieta and Mateo Urbieta's

(collectively, the "Urbietas") Motion to Alter/Amend/Supplement Pleadings [Docket No. 28].

For the reasons set forth below, Mentor's Objection is overruled.

## II.  BACKGROUND

The Urbietas are members of a group of plaintiffs (collectively, "Plaintiffs") who have

filed cases against Mentor based upon Mentor's design, manufacture, and sale of a transobturator

vaginal sling device ("ObTape") used for treating urinary incontinence.  See Punitive Damages

Order at 5. The Urbietas allege that the ObTape was defective and caused "serious and permanent bodily injuries, including erosion of the ObTape medical device through [Graciela Urbieta's] internal bodily tissues, chronic infections, pain, exacerbation of . . . urinary incontinence, and the need for multiple additional surgical procedures and medical treatment as well as the need for extensive future medical care." Compl. [Docket No. 1-1]. Plaintiffs assert claims for strict liability, negligence, breach of express and implied warranties, common law and constructive fraud, negligent and intentional misrepresentation, and loss of consortium.

After the cases were remanded from an MDL court to the District of Minnesota, Chief Judge John R. Tunheim assigned Judge Rau to coordinate the cases for settlement and a pretrial scheduling order. [Docket No. 10] ("Administrative Order"). Judge Rau instructed Plaintiffs and Mentor to each select a case in which motions to add claims for punitive damages would be filed. Pretrial Scheduling Order [Docket No. 24] 4. The Urbieta case and Jackson v. Mentor Corp., No. 13-cv-768 (SRN/KMM) (D. Minn) were selected as "bellwether" punitive damages cases, with the understanding that any order issued by Judge Rau would be issued in all the cases.[1] See Order [Docket No. 71].

At the March 16, 2018 hearing on the motions to add punitive damages claims, Judge Rau raised the issue of the appropriate standard for amending the pleadings to add punitive damages claims, and ordered the parties to submit supplemental briefing regarding whether the motions should be analyzed under Rule 15 of the Federal Rules of Civil Procedure or, alternatively, Minnesota Statute § 549.191. See Order [Docket No. 98]. Judge Rau recognized that magistrate judges in this district have recently reassessed their earlier positions on this issue

---

[1] This order similarly applies to the remanded cases.

in light of Shady Grove Orthopedic Associates, P.C. v. Allstate Ins. Co., 559 U.S. 393 (2010).

The results have been inconsistent. See In re Bair Hugger Forced Air Warming Devices Prods.

Liab. Litig., MDL No. 15-2666, 2017 WL 5187832 (D. Minn. July 27, 2017) (finding that Rule

15 applies); Inline Packaging, LLC v. Graphic Packaging Int'l, LLC, No. 15-3183 (D. Minn.

Mar. 8, 2018) (finding that Minn. Stat. § 549.191 applies).

On May 15, 2018, Judge Rau ruled that the motions to amend would be evaluated under

Rule 15. After assessing Plaintiffs' allegations, Judge Rau concluded "that as of July 16, 2004,

Mentor knew facts that created a high probability of injury." Punitive Damages Order at 26.

Thus, only those Plaintiffs who were implanted with ObTape after July 16, 2004, were permitted

to amend their complaints to claim punitive damages.[2]

Mentor objects to the conclusion in the Punitive Damages Order's that Rule 15 is the

applicable standard. Mentor contends that Minn. Stat. § 549.191 applies, and that Judge Rau

was therefore required to consider the admissible evidence rather than merely considering

Plaintiffs' allegations. Plaintiffs respond that Judge Rau's analysis is proper and should be

upheld[3]

### III.  DISCUSSION

**A.  Standard of Review**

Mentor argues that "[s]ince this is an error of law, review is de novo." Obj. at 2 (citing

---

[2] In the Urbieta case, the motion to amend was granted since the plaintiff was implanted with ObTape after July 16, 2004. In the Jackson case, the motion to amend was denied since the plaintiff was implanted with ObTape before July 16, 2004. Punitive Damages Order at 28.

[3] Plaintiffs argue that if this Court conducts a de novo review of the Punitive Damages Order, Mentor actually knew of facts that created a high probability of injury before the July 16, 2004 date determined by Judge Rau. Plaintiffs' argument is only belatedly raised and is rejected. Review of the Punitive Damages Order is not de novo.

E. Coast Test Prep LLC v. Allnurses.com. Inc., 167 F. Supp. 3d 1018, 1021 (D. Minn. 2016)).

The Court disagrees.  The Eighth Circuit and courts in this district have consistently held that a

motion to amend to assert punitive damages is a nondispositive motion subject to deferential

review in the district court.  See, e.g.  Daley v. Marriott Int'l Inc., 415 F.3d 889, 893 n.9 (8th Cir.

2005) (viewing motions to amend as a "nondispositive pretrial motion"); Best Buy Stores, L.P.

v. Developers Diversified Realty Corp., No. 05-2310, 2008 WL 227689, at *1 (D. Minn. Jan. 25,

2008) (citing Multi-Tech Sys., Inc. v. Hayes Microcomputer Prods., Inc., 800 F. Supp. 825,

853–54 (D. Minn. 1992)).

The court must affirm a decision by a magistrate judge on a nondispositive issue unless

the decision is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  A decision is

"'clearly erroneous' when, although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed."

Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996).  "A decision is

'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law or rules of

procedure.'"  Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn.

2008) (quoting Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F. Supp. 2d 1087,

1093 (N.D. Iowa 2008)).

**B.  Mentor's Objection**

Mentor argues that the Punitive Damages Order is contrary to law because it fails to

apply Minnesota law.  According to Mentor, Judge Rau's misapplication of Shady Grove lead to

the erroneous conclusion that Rule 15 governs the motion to amend.

Before the merits of Mentor's Objection are addressed, Shady Grove and the Punitive

Damages Order will be briefly discussed.

## 1. **Shady Grove**

In <u>Shady Grove</u>, the Supreme Court addressed whether Federal Rule of Civil Procedure 23 governing class actions conflicted with a New York state law ("§ 901") that precludes class action suits seeking penalties or statutory minimum damages. 559 U.S. at 396. The plaintiff brought a putative class action in federal court on diversity grounds, seeking to collect unpaid statutory interest under a New York state law. <u>Id.</u> at 397. Under New York law, statutory interest is a penalty. <u>Id.</u> Therefore, the plaintiff's case would have been barred by § 901 had it been brought in state court. The case was dismissed by the district court for lack of subject-matter jurisdiction. The Second Circuit affirmed, holding that Rule 23 and § 901 did not conflict, and that § 901 was substantive and must therefore be applied by federal courts sitting in diversity. <u>Id.</u> at 398.

In a fragmented 4-1-4 decision, the Supreme Court reversed. Justice Scalia delivered the opinion of the court with respect to Parts I and II-A. In Part II-A, the court reiterated the "familiar" two-step framework that applies when a federal rule and a state law both seemingly govern. <u>Id.</u> The first step is determining whether the federal rule directly conflicts with the state law. A direct conflict exists if the federal rule "answers the question in dispute." <u>Id.</u> If it does, the federal rule applies "unless it exceeds statutory authorization or Congress's rulemaking power." <u>Id.</u>

Five justices agreed that Rule 23 and § 901 "flatly contradict[ed]" each other. <u>Id.</u> at 405. Therefore, the next question was whether the federal rule exceeded the scope of the Rules Enabling Act, 28 U.S.C. § 2017, et. seq. <u>Id.</u>

Justice Stevens declined to join part II-B of Justice Scalia's opinion addressing the validity of Rule 23. In that section, Justice Scalia stated that a Federal Rule of Civil Procedure is

5

within the Rules Enabling Act if the Rule is procedural in nature, meaning that it "governs only the manner and the means by which the litigants' rights are enforced." Id. at 407 (quotations omitted). Justice Scalia determined "the substantive nature of New York's law, or its substantive purpose, makes no difference." Id. at 409 (emphasis in original).

Justice Stevens wrote a separate opinion addressing whether Rule 23 violates the Rules Enabling Act. Justice Stevens agreed with the four dissenting justices "that there are some state procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies." Id. at 416–17 (Stevens, J., concurring). Thus, Justice Stevens held that a "federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Id. at 423. However, Justice Stevens noted that "[w]hen a federal rule appears to abridge, enlarge, or modify a substantive right, federal courts must consider whether the rule can reasonably be interpreted to avoid that impermissible result." Id.

As discussed further below, the fractured opinion has yielded inconsistent results with the application of Shady Grove.

### 2. The Punitive Damages Order's Application of Shady Grove

Under Shady Grove and predecessor cases, Judge Rau viewed the first step of the analysis as "whether Rule 15 answers the question" of whether Plaintiffs may amend their complaints to seek punitive damages. Punitive Damages Order at 12. Judge Rau determined the answer to be yes because Rule 15 permits amending a complaint "when justice so requires." Id. In contrast, Minn. Stat. § 549.191 requires "affidavits showing the factual basis for the claim," which requires a court to exercise its gatekeeping function by examining submissions outside the

6

pleadings.  Id. at 15.  If "prima facie evidence" supports the motion, it "shall" be granted.  Minn.

Stat. § 549.191.

The "when justice so requires" standard of Rule 15 does not require evidentiary proof.

As Judge Rau explained, under Rule 15 an amendment shall be permitted so long as the amended

complaint is not futile, meaning it can survive a motion to dismiss under Rule 12(b)(6).  Punitive

Damages Order at 14–15.  In assessing the sufficiency of a pleading in the context of Rule

12(b)(6) motion, a court is generally prohibited from considering matters outside the pleadings.

Id. at 15.  Accordingly, Judge Rau determined that Rule 15 affirmatively answers the question of

whether the amended pleading should be permitted.[4]  Id.

Judge Rau then turned to the next step of the analysis outlined in Shady Grove:  whether

the determinative federal rule conflicts with the Rules Enabling Act.  Id. at 16.  Here, Judge Rau

stated "[t]he test used to make this determination is what divided the Supreme Court in Shady

Grove."  Id.  Rather than endeavoring to determine which opinion in Shady Grove controlled,

Judge Rau elected to apply earlier Supreme Court precedent holding that "[a] rule that 'really

regulates procedure,' is valid under the Rules Enabling Act."  Id. (quoting Sibbach v. Wilson &

Co., 312 U.S. 1, 14 (1941)).  Since "whether a party may add a claim under Rules 8, 9, 12, and

15 ' is divorced from a merits-based analysis of whether that party can prevail on that claim

under controlling substantive law,'" Judge Rau concluded that Rules 8, 9, 12, and 15 are valid

under the Rules Enabling Act.  Id. (quoting Selective, 2018 WL 1960450, at *13).

---

[4] Judge Rau applied the same analysis in a different case to conclude that Rule 15 governs over Minn. Stat. § 604.18, which similarly requires accompanying affidavits and prima facie evidence to amend the pleadings to add a claim for bad faith denial of insurance coverage. Selective Ins. Co. of S.C. v. Sela, No. 16-4077, 2018 WL 1960450, at *2–11 (D. Minn. Apr. 26, 2018).

Although his analysis could have ended there, Judge Rau explained that the result would

be the same even if the framework advanced by Justice Stevens in Shady Grove controlled.

Judge Rau found that the punitive damages pleading statute, Minn. Stat. § 549.191, is not so

intertwined with the substantive component of punitive damages in Minn. Stat. § 549.20 that the

pleading statute functionally defines the scope of the state-created right. Id. at 17. Judge Rau

viewed the Minnesota legislature's decision to separate the procedural requirement from the

substantive standard of proof as confirmation that the evaluation to plead punitive damages is

different from the evaluation to allow an award of punitive damages. Id. Additionally, since the

pleading statute requires the moving party to "allege the applicable legal basis under section

549.20 or other law," it further highlights that the substantive statute defines the scope of the

state-created right, not the pleading statute. Id. at 18 (emphasis in original).

### 3. The Merits of Mentor's Objection

Mentor argues that Justice Stevens concurring opinion in Shady Grove established a

middle, narrower holding and it therefore controls under Marks v. United States, 430 U.S. 188,

193–94 (1977). According to Mentor, Judge Rau's failure to adhere to Justice Stevens'

framework resulted in a faulty analysis that supports an erroneous conclusion.

First, Mentor contends that Judge Rau erred by not applying any of Justice Stevens'

concurrence when assessing whether Rule 15 "answers the question in dispute." Mentor argues

that Judge Rau "improperly truncated step one" by failing to consider whether Rule 15 can

operate alongside Minn. Stat. § 519.191, because "'a federal rule, like any federal law, must be

interpreted in light of many different considerations, including sensitivity to important state

interests . . . and regulatory policies.'" Obj. at 5 (quoting Shady Grove, 559 U.S. at 421

(Stevens, J., concurring)). Mentor asserts that Judge Rau failed to determine whether Rule 15

can operate in tandem with the Minnesota law.

Mentor's argument is unpersuasive. The linchpin of Mentor's position is that Justice Stevens' concurring opinion controls pursuant to <u>Marks</u>. Under <u>Marks</u>, when "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." <u>Marks</u>, 430 U.S. at 193 (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169 n.15 (1976)). In <u>Shady Grove</u>, however, Justice Stevens agreed with the portion of Justice Scalia's opinion that set forth the analysis for step one, which was derived from Supreme Court cases that remain good law. <u>See</u> e.g., <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740 (1980); <u>Burlington N. R.R. Co. v. Woods</u>, 480 U.S. 1 (1987). In this part of his opinion, Justice Scalia was writing for a five justice majority that included Justice Stevens. Therefore, some courts view Justice Scalia's opinion with respect to step one of the analysis as controlling. <u>See</u>, <u>e.g.</u> <u>3M Co v. Boulter</u>, 842 F. Supp. 2d 85, 95 n.7 (D.D.C. 2012) (applying Justice Scalia's step one analysis because it has the assent of a five justice majority).[5] Although other courts have reached the opposite conclusion, Judge Rau's decision to rely upon Justice Scalia's opinion for this step is not clearly erroneous or contrary to law. <u>See</u> <u>Phillips v. Phillip Morris Cos. Inc.</u>, 290 F.R.D. 476, 479–80 (N.D. Ohio 2013) (treating Justice Stevens' concurrence as the holding under <u>Marks</u>).

Mentor next argues that Rule 15 violates Justice Stevens' Rules Enabling Act test because applying Rule 15 would effectively enlarge a state-created remedy in contradiction of the Rules Enabling Act's directive that federal rules "not abridge, enlarge or modify <u>any</u>

---

[5] The Eighth Circuit has not weighed in on the issue.

substantive right." Shady Grove, 559 U.S. 393, 422 (quoting 28 U.S.C. § 2072(b)) (emphasis in original). Judge Rau addressed this argument and concluded that Rule 15 does not displace the substantive right to obtain punitive damages under Minnesota law.[6] As described above, Judge Rau noted that the distinction between pleading and obtaining punitive damages demonstrates that the pleading statute, Minn. Stat. § 549.191, does not define the scope of the state-created right.

Mentor attempts to sidestep this conclusion by arguing that Minn. Stat. § 549.191 operates to limit the scope of the state law punitive damages remedy. But the scope of the state-created right is provided in Minn. Stat. § 549.20, not Minn. Stat. § 549.191. As noted earlier, although a plaintiff that fails to satisfy the procedural step will be unable to obtain punitive damages, the procedural statute is not "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." Shady Grove, 559 U.S. at 423 (Stevens, J., concurring).

For these reasons, the Punitive Damages Order is not clearly erroneous or contrary to law.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendants Mentor Corporation and Mentor Worldwide LLC's Objection [Docket No. 115] to Magistrate Judge Steven E. Rau's May 15, 2018 Order [Docket No. 114] is **OVERRULED**;

---

[6] This was discussed as an "even if" argument since Judge Rau did not view Justice Stevens' concurrence as controlling—a position different than some, but not all, of other judges to have waded in Shady Grove's murky waters. Punitive Damages Order at 15.

2.      Magistrate Judge Rau's May 15, 2018 Order is **AFFIRMED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 19, 2018.